UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GULF TO BAY LM, LLC, a Florida
limited liability company,

    Plaintiff,

v.                                                   Case No. 8:20-cv-_____

THE KROGER CO., an Ohio corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Gulf to Bay LM, LLC, a Florida limited liability company ("Gulf to Bay" or "Plaintiff"), by counsel, files this Complaint against Defendant, The Kroger Co., an Ohio corporation ("Kroger" or "Defendant"). In support, Gulf to Bay alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action by Gulf to Bay to enforce Kroger's obligations under its unconditional guaranty of a lease agreement between Gulf to Bay and Lucky's Market Operating Company, LLC ("Lucky's Market"). Lucky's Market is a specialty organic grocery chain with locations in multiple states, including Florida. In 2016, Kroger acquired a majority interest in Lucky's Market. Thereafter, Kroger and Lucky's Market developed a program to further expand the Lucky's Market concept into Florida. As part of their expansion program, Lucky's Market entered into a commercial lease with Gulf to Bay to develop and operate a Lucky's Market in Clearwater, Florida. Kroger unconditionally guaranteed all of Lucky's Market's obligations under the lease. In reliance on those commitments, Gulf to Bay began developing the Clearwater property into an upscale shopping center complex anchored by the Lucky's Market store. Between

June of 2018 and December of 2019, Gulf to Bay substantially performed its obligations under the lease. Unfortunately, however, in late December of 2019, during a critical phase of construction at the Clearwater project, Kroger elected to terminate its investment in Lucky's Market. As a result, Lucky's Market issued a stop work order to its general contractor assigned to the project, which resulted in the abandonment of the project in an unfinished and hazardous condition. Shortly thereafter, Lucky's Market filed for bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. Despite demand, neither Lucky's Market nor Kroger have performed their obligations under the lease and guaranty. Consequently, to redress and remedy the serious and irreparable harm caused by Kroger's failure to honor the terms of its unconditional guaranty, Gulf to Bay sues Kroger for breach of guaranty (Count I) and for injunctive relief (Count II).

## PARTIES, JURISDICTION, AND VENUE

2. Gulf to Bay is a Florida limited liability company. As set forth below, Gulf to Bay is a citizen of the State of Florida:

   a. The one hundred percent (100%) member of Gulf to Bay is Greenleaf Capital, LLC, a Florida limited liability company.

   b. The one hundred percent (100%) member of Greenleaf Capital, LLC is HCI Group, Inc., a Florida corporation.

   c. HCI Group, Inc. is a Florida corporation with a principal place of business in Tampa, Florida.

3. Kroger is an Ohio corporation with a principal place of business in Cincinnati, Ohio. As a result, Kroger is a citizen of the State of Ohio

4. This is an action for damages in excess of $75,000.00 between citizens of different States. As a result, this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1).

5. A substantial part of the events that gave rise to this lawsuit occurred in Pinellas County, Florida. As a result, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

6. On or about June 14, 2018, Dixit Properties, LLC, Delaware limited liability company ("Dixit DE"), entered into a Shopping Center Lease ("Lease") with Lucky's Market for 32,200 square feet of retail space and loading dock located at 2150 Gulf to Bay Boulevard, Clearwater, Florida 33765 (the "Property"). A true and correct copy of the Lease, together with exhibits thereto, is attached hereto as **Composite Exhibit 1.**

7. In 2018, Gulf to Bay acquired the Property, together with 100% of the equity interests in Dixit DE, from Dixit Properties, LLC, a Florida limited liability company ("Dixit FL"). Subsequently, Dixit DE assigned the Lease to Gulf to Bay and was administratively dissolved. For ease of reference, Dixit DE and Gulf to Bay are referred to collectively herein as Gulf to Bay.

8. Pursuant to the Lease, Lucky's Market and Gulf to Bay agreed to develop the Property into a Lucky's Market grocery store, which was intended to serve as the anchor tenant in a new upscale 57,000 square foot shopping center complex owned by Gulf to Bay.

9. As both consideration for the Lease and as an inducement to Gulf to Bay to undertake the shopping center development, Kroger entered into a Guaranty with Gulf to Bay whereby Kroger agreed to guaranty all of Lucky's Market's obligations of payment and performance under the Lease. A true and correct copy of the executed Guaranty is attached hereto as **Exhibit 2**.

10. The Guaranty states, in pertinent part, that:

[Kroger] unconditionally guarantees the prompt payment by [Lucky's Market] of all sums payable by [Lucky's Market] under the Lease and the faithful and prompt performance by [Lucky's Market] of each and every one of the terms, conditions and covenants of the Lease to be kept and performed by [Lucky's Market] as such are defined in the Lease. The reduction of or limitation on any liabilities of [Lucky's Market] under the Lease pursuant to any federal or state bankruptcy or insolvency proceeding shall not cause a reduction in or otherwise affect the liabilities or obligations of [Kroger] under this Guaranty.

. . . .

No notice of default need be given to [Kroger], it being specifically agreed and understood that the guarantee of [Kroger] is a continuing guarantee under which [Gulf to Bay] may proceed forthwith and immediately against [Lucky's Market] or against [Kroger] following any breach or default by [Lucky's Market] or for the enforcement of any rights that [Gulf to Bay] may have against [Lucky's Market] pursuant to or under the terms of the Lease or at law or in equity.

[Gulf to Bay] shall have the right to proceed against [Kroger] hereunder following any default by [Lucky's Market] without first proceeding against [Lucky's Market] and without previous notice to or demand upon either [Lucky's Market] or [Kroger].

[Kroger] hereby waives (a) notice of acceptance of this Guaranty, (b) demand of payment, presentation and protest, and (c) any right to require [Gulf to Bay] to proceed against [Lucky's Market] or any other Guarantor or any other person or entity liable to [Lucky's Market].

This Guaranty, all acts and transactions hereunder and the rights and obligations of the parties hereto shall be governed by and construed and enforced in accordance with the laws of the State of Florida. All actions or proceedings arising directly or indirectly hereunder will be litigated in courts having situs within the State of Florida, and [Kroger] hereby expressly consents to the jurisdiction of any such local, state or federal court.

11. Between June of 2018 and November 1, 2019, Gulf to Bay performed its obligations under Section 2(b) of the Lease (Landlord's Approvals) and Section 2(c) of the Lease

(Landlord's Work), resulting in "Substantial Completion" of Gulf to Bay's obligations under the Lease and delivery of the Property to Lucky's Market under Section 2(d) of the Lease.

12. Consistent with the foregoing, on December 20, 2018 and December 19, 2019, Lucky's Market and Gulf to Bay entered into two Amendments to Shopping Center Lease (the "Amendments"). True and correct copies of the Amendments are attached hereto as **Composite Exhibit 3.**

13. The December 19, 2019 Amendment states, in pertinent part, that

> [Gulf to Bay's] delivery date for the Substantial Completion of Landlord's Work shall be November 1, 2019.
>
> The main term of the Lease will commence on the earlier of (i) April 29, 2020 or (ii) upon [Lucky's Market] opening for business in the Premises (the "Commencement Date") and end on the last day of the month in which the 15th anniversary of the Commencement Date occurs (the "Main Term").

14. On or about December 20, 2019, rather than complete the remaining work necessary to construct the Lucky's Market grocery store as required by the Lease, Lucky's Market issued a work stoppage order to its general contractor, Snyder Construction, Inc. ("Snyder"), that resulted in the cessation of all construction activities at the Property.

15. Upon information and belief, Lucky's Market issued the work stoppage order at Kroger's direction based on Kroger's decision to terminate its investment in Lucky's Market.

16. The work stoppage order occurred at a critical time in the construction of the Lucky's Market store, when the roof, walls, and floor slab of the structure were in an unfinished condition and the Property was exposed to the elements.

17. On or about December 24, 2019, Gulf to Bay sent Lucky's Market a correspondence raising concerns with the work stoppage, namely that the Property had been

abandoned in an unfinished condition that left it exposed to the elements. A copy of the December 24, 2019 correspondence is attached hereto as composite **Exhibit 4.**

18. Lucky's Market responded that it would secure the Property; however, as of the filing of this lawsuit, neither Lucky's Market nor Kroger have taken any action to secure the Property or complete construction of the Lucky's Market as required by the Lease and Guaranty.

19. On or about December 27, 2019, Gulf to Bay sent Lucky's Market an additional correspondence (with carbon copies to Kroger, among others) renewing and expressing its continued concerns with the work stoppage. A copy of that correspondence with pictures is attached hereto as **Exhibit 5.**

20. Neither Lucky's Market nor Kroger have responded to Gulf to Bay's December 27, 2019 correspondence.

21. On or about January 22, 2020, Snyder recorded a Claim of Lien against the Property in the public records of Pinellas County, Florida, asserting a claim for unpaid labor, services, and materials in the amount of $901,761.00. A true and correct copy of the Claim of Lien, as amended, is attached hereto as **Exhibit 6.**

22. In light of the foregoing, Lucky's Market and Kroger have materially failed to perform numerous of their obligations under the Lease, including by failing to: complete the construction of the Lucky's Market store; obtain unconditional lien waivers from all subcontractors, suppliers, manufacturers and general contractors; complete as-built drawings; execute substantial completion forms as well have having the architect and general contractor execute the substantial completion form; obtain certificates of completion; obtain certificates of occupancy; obtain manufacturers' certified start-up reports; obtain certified test and balance reports for HVAC systems; provide labor and manufacturer warranties; provide construction

materials testing reports; provide operation and maintenance manuals; and provide all additional closeout deliverables required by the Lease, final plans and specifications.

23. Moreover, by abandoning the Property in an exposed and unfinished condition, Lucky's Market and Kroger have failed to perform Lucky's Market's obligations under Section 9(b) of the Lease (Tenant's Obligations), which states in pertinent part that:

> At [Lucky's Market's] sole cost and expense, [Lucky's Market] will maintain, repair and replace: (i) the nonstructural and interior components of the Premises except as set forth in Section 9(a) (including, but not limited to the interior walls and interior ceiling); (ii) the windows, doors and plate glass of the Premises; (iii) all plumbing, wiring and other utility facilities serving the Premises from and after their points of connection with the meter and into the Premises for such utilities serving the Premises; (iv) the heating, ventilation and air conditioning system ("HVAC") serving the Premises (including continued operation of such HVAC if [Lucky's Market] ceases operations in order to avoid mold); (v) [Lucky's Market's] building signage, and panels on any pylon sign(s), [Lucky's Market's] cart corrals, [Lucky's Market's] grease interceptor and any skylights installed by [Lucky's Market] and (vi) the roof should [Lucky's Market] directly cause any warranty damage. Such maintenance, repair and replacement will include all work necessary to keep the foregoing in good order, condition and repair, ordinary wear and tear, obsolescence and damages by casualty excepted.

24. Furthermore, Lucky's Market and Kroger have failed to perform Lucky's Market's obligations under Section 13(a) of the Lease (Indemnity and Insurance), which requires Lucky's Market to maintain appropriate levels of commercial general liability, property, and worker's compensation insurance.

25. On January 27, 2020, Lucky's Market filed a Voluntary Petition for Non-Individuals Filing for Bankruptcy (the "Petition") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware. A true and correct copy of the Petition is attached hereto as **Exhibit 7.**

26. Upon information and belief, Lucky's Market and Kroger do not intend to cure the defaults under the Lease in connection with Lucky's Market's pending bankruptcy case.

27. All conditions precedent to the filing of this action have been satisfied or waived.

## COUNT I – BREACH OF GUARANTY

28. Gulf to Bay re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-27 above.

29. This is an action for breach of guaranty under Florida law.

30. The Guaranty is a valid and binding contract between Kroger and Gulf to Bay.

31. The Guaranty requires Kroger to, among other things, unconditionally guarantee "the prompt payment by [Lucky's Market] of all sums payable by [Lucky's Market] under the Lease and the faithful and prompt performance by [Lucky's Market] of each and every one of the terms, conditions and covenants of the Lease to be kept and performed by [Lucky's Market] as such are defined in the Lease."

32. Lucky's Market has failed to comply with its obligations under the Lease, including by failing to:

   a. complete the construction of the Lucky's Market store at the Property;

   b. obtain unconditional lien waivers from all subcontractors, suppliers, manufacturers and general contractors;

   c. complete as-built drawings; execute substantial completion forms as well have having the architect and general contractor execute the substantial completion form; obtain certificates of completion;

   d. obtain certificates of occupancy;

   e. obtain manufacturers' certified start-up reports;

  f. obtain certified test and balance reports for HVAC systems;

  g. provide labor and manufacturer warranties;

  h. provide construction materials testing reports; provide operation and maintenance manuals;

  i. provide all additional closeout deliverables required by the Lease, final plans and specifications;

  j. perform Lucky's Market obligations under Section 9(b) of the Lease (Tenant's Obligations); and

  k. perform Lucky's Market obligations under Section 13(a) of the Lease (Indemnity and Insurance).

33. Despite demand by Gulf to Bay, Kroger has failed to perform its obligations under the Guaranty to ensure "the prompt payment by [Lucky's Market] of all sums payable by [Lucky's Market] under the Lease and the faithful and prompt performance by [Lucky's Market] of each and every one of the terms, conditions and covenants of the Lease to be kept and performed by [Lucky's Market] as such are defined in the Lease."

34. Kroger's failure to perform its obligations under the Guaranty has resulted in damage to Gulf to Bay, including direct, indirect, and consequential damages.

WHEREFORE, Gulf to Bay demands entry of judgment against Kroger for (i) breach of guaranty, (ii) monetary damages, including direct, incidental, and consequential damages, (iii) attorney's fees, costs, and interest, and (iv) such additional relief the Court deems just and proper.

## COUNT II – PRELIMINARY AND PERMANENT INJUNCTION

35. Gulf to Bay re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1-27 above.

36. This is an action for injunctive relief pursuant to Federal Rule of Civil Procedure 65.

37. The Debtor seeks the issuance of preliminary and permanent injunctions requiring Kroger to perform Lucky's Market's non-monetary obligations under the Lease, including Lucky's Market's obligations to:

    a. complete the construction of the Lucky's Market store at the Property;

    b. obtain unconditional lien waivers from all subcontractors, suppliers, manufacturers and general contractors;

    c. complete as-built drawings; execute substantial completion forms as well have having the architect and general contractor execute the substantial completion form; obtain certificates of completion;

    d. obtain certificates of occupancy;

    e. obtain manufacturers' certified start-up reports;

    f. obtain certified test and balance reports for HVAC systems;

    g. provide labor and manufacturer warranties;

    h. provide construction materials testing reports; provide operation and maintenance manuals;

    i. provide all additional closeout deliverables required by the Lease, final plans and specifications;

    j. perform Lucky's Market's obligations under Section 9(b) of the Lease (Tenant's Obligations); and

    k. perform Lucky's Market's obligations under Section 13(a) of the Lease (Indemnity and Insurance).

38. Gulf to Bay has a substantial likelihood of success on the merits of its claim for Breach of Guaranty.

39. A substantial threat of irreparable injury to Gulf to Bay exists if Kroger is not required to perform Lucky's Market's non-monetary obligations under the Lease, including the obligations set forth above.

40. The actual and threatened injury, loss, or damage to Gulf to Bay far outweighs any prejudice that Kroger may suffer as a result of the entry of a preliminary or permanent injunction.

41. The issuance of preliminary and permanent injunctions requiring Kroger to perform Lucky's Market's non-monetary obligations under the Lease would best serve the public interest.

42. Gulf to Bay has no adequate remedy at law.

43. No bond or other security is appropriate or necessary.

WHEREFORE, Gulf to Bay demands the entry of (i) a final judgment against Kroger for preliminary and permanent injunction as requested hereunder; and (ii) for such other and further relief as this Court deems just and proper.

## RESERVATION

Gulf to Bay reserves all rights to assert a claim against Lucky's Market in its chapter 11 bankruptcy case; however, Gulf to Bay does not seek any relief against Lucky's Market in this action that is, or could be construed to be, subject to the automatic stay of 11 U.S.C. § 362.

Dated this 1st day of April 2020.

/s/ *Erik Johanson*
David S. Jennis
Florida Bar No. 775940
Erik Johanson
Florida Bar No. 106417
Jennis Law Firm
606 E. Madison Street
Tampa, FL 33602

Email: ecf@jennislaw.com
djennis@jennislaw.com
ejohanson@jennislaw.com
Telephone: 813-229-2800
*Counsel for Plaintiff*